# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SALLY PRUITT,<br>    Plaintiff, | : <br> : <br> : | |
| v. | : | 3:06cv1530(WWE) |
| | : <br> : | |
| MAILROOM TECHNOLOGY, INC. and<br>RANA DUTTA,<br>    Defendants. | : <br> : <br> : | |

### RULING ON DEFENDANTS' MOTION TO DISMISS

Plaintiff Sally Pruitt brings this action against her former employer and supervisor, respectively, Mailroom Technology, Inc. and Rana Dutta, alleging violations of the Americans with Disabilities Act, Title VII, the Rehabilitation Act, Connecticut Fair Employment Practices Act ("CFEPA"), and common law claims of wrongful discharge, negligent and intentional infliction of emotional distress, and negligent supervision.

Defendants have filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for failure to exhaust administrative remedies and failure to state a claim.[1]  For the following reasons, the motion to dismiss will be granted in part and denied in part.

### BACKGROUND

The following background is taken from the allegations of the complaint, which are considered to be true for purposes of ruling on a motion to dismiss.

---

[1] As discussed further in this ruling, plaintiff's exhaustion of administrative remedies is considered a precondition to suit rather than a jurisdictional prerequisite. Thus, the Court considers this motion pursuant to the standards of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  See Spector v. Board of Trustees of Community-Technical Colleges, 463 F.Supp.2d 234 (D.Conn. 2006).

1

Plaintiff was employed as a paralegal at Mailroom Technology from April 2001 through September 2004.

Defendant Rana Dutta, who held the position of Vice President of Research and Development at Mailroom Technology, became plaintiff's supervisor in 2002. Prior to that time, Richard Rosen was plaintiff's supervisor.

Plaintiff was responsible for the general supervision of the Intellectual Property Department, which files patent applications on behalf of defendant Mailroom Technology.

In 2001, no patent filings occurred. However, under plaintiff's supervision, the Intellectual Property Department filed 28 patent applications in 2002, and 23 patent applications in 2003. Plaintiff received many favorable employee evaluations.

At the time relevant to this action, plaintiff suffered from medical complications including pulmonary distress and acute and recurring asthma exacerbation. Plaintiff sought reasonable accommodations for her known medical disability.

Defendant Dutta belittled plaintiff in the presence of her subordinates and senior executives. Dutta caused plaintiff to feel threatened by confronting her in a hostile manner relative to work issues. At one time, plaintiff refused to comply with Dutta's order to backdate her most recent employee evaluation. These confrontations with Dutta caused plaintiff to feel heightened states of anxiety, which brought on asthmatic seizures.

Plaintiff discussed her concerns relative to Dutta's conduct with Kimberly DeFrank, Vice President of Human Resources, Joe Bonassar, General Counsel, and Dennis Gilham, Executive to the Chief Executive Officer. DeFrank faulted plaintiff for

the hostility by Dutta and directed plaintiff to speak directly with him about the issue. Bonassar told plaintiff that he would seek reassignment to remove her from Dutta's direct supervision.

Plaintiff's attempt to discuss her concerns with Dutta resulted in escalation of Dutta's hostility toward her.

In December 2003, and February, April, June, July and September 2004, plaintiff required emergency medical intervention due to respiratory distress and asthma attacks.

While hospitalized in June 2004, plaintiff had a psychological evaluation and was prescribed medication for severe depression.

During summer 2004, plaintiff spoke with DeFrank about her ongoing conflict with Dutta.

On September 10, 2004, at 3:00 A.M., plaintiff required hospital intervention after suffering an acute asthma attack and respiratory distress. That morning, plaintiff left Dutta a voice mail to inform him that she was unavailable for work due to her medical condition. Later that day, Dutta telephoned plaintiff to suggest that they establish a routine of weekly meetings in an effort to alleviate the conditions contributing to plaintiff's increasing asthmatic problems. Plaintiff considered Dutta's suggestion and then called him back to inform him of her acceptance. In that conversation, Dutta told her that he was not allowed to speak with her without a third party from Human Resources present due to her previous complaints about him.

Plaintiff then reached DeFrank by telephone. During that conversation, DeFrank informed plaintiff that she was being terminated from employment on that day.

DeFrank informed plaintiff that she could be compensated as an "independent contractor" for an interim period for the purpose of training her replacement.

On September 20, 2004, plaintiff filed a complaint with Connecticut Commission on Human Rights and Opportunities. The complaint was dual-filed with the Equal Employment Opportunity Commission, which deferred its investigation pending the CHRO investigation. The CHRO released jurisdiction on May 31, 2006.

This litigation ensued.

## DISCUSSION

The function of a motion to dismiss for failure to state a claim is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F. 2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). However, the plaintiff must provide the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007).

### Exhaustion of Administrative Remedies

Defendants assert that this Court should dismiss plaintiff's Title VII and ADA claims of counts two and three due to failure to allege that she obtained a right-to-sue letter from the EEOC.

A plaintiff claiming employment discrimination pursuant to Title VII must pursue

administrative procedures pursuant to certain deadlines before commencing a lawsuit.[2] Fitzgerald v. Henderson, 251 F.3d 345, 359-360 (2d Cir. 2001). Exhaustion of the administrative remedies and receipt of a right-to-sue letter is a precondition to a Title VII claim. Legani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001). Exhaustion is not a jurisdictional prerequisite, but is a requirement that, like a statute of limitations, is subject to waiver, estoppel and equitable tolling. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). The exhaustion requirement exists to afford the administrative agency the opportunity to investigate, mediate, and take remedial action. Stewart v. United States Immigration and Naturalization Service, 762 F. 2d 193, 198 (2d Cir. 1985).

In this instance, plaintiff asserts that she was entitled to file her action in state court after receiving a release of jurisdiction and right to sue letter from the CHRO. The CHRO is a deferral state agency with a work-sharing agreement with the EEOC. Gorman v. Hughes Danbury Optical Systems, 908 F.Supp. 107, 111 (D.Conn. 1995). Thus, exhaustion of state procedures through the CHRO allows plaintiff to proceed with her state and federal claims.[3] Ortiz v. Prudential Insurance Co., 94 F.Supp.2d 225, 230-31 (D.Conn. 2000) (purposes of exhaustion requirement served through state proceeding).

Defendants argue further that plaintiff's Title VII and CFEPA allegations of

---

[2] ADA exhaustion requirements are analogous to those for Title VII claims. Rieger v. Orlor, Inc., 427 F.Supp.2d 105, 114 (D.Conn. 2006).

[3] Plaintiff has also submitted a letter from the EEOC, indicating that plaintiff's file was destroyed but that a right-to-sue letter should have issued in this case.

gender discrimination, sexual harassment and retaliation of counts one and two should also be dismissed. Defendants argue that such allegations were not contained in plaintiff's administrative complaint and, therefore, are barred by the time limitations and exhaustion requirements.[4]

A district court may hear only Title VII or CFEPA claims that either are included in an administrative charge or that are based on conduct which is "reasonably related" to the conduct alleged in the administrative charge. Butts v. City of New York Dept. of Housing, 990 F. 2d 1397, 1401 (2d Cir. 1993); Garris v. Department of Correction, 170 F.Supp.2d 182, 188 (D.Conn. 2001) (applying "reasonably related" analysis to CFEPA claim).

In Butts, the Second Circuit described three situations where claims not alleged in an administrative charge are sufficiently related to the allegations within the charge to allow such claims to proceed in the plaintiff's civil rights action: 1) where an investigation into the claims not raised would have reasonably flowed from an investigation into the claims alleged in the administrative charge; 2) where the plaintiff alleges retaliation by the employer against the employee for filing the administrative charge; and 3) where the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the administrative charge.

To determine whether claims are reasonably related, the court should focus on the factual allegations of the administrative charge describing the alleged discriminatory

---

[4] Generally, the relevant federal precedent is applicable to Connecticut's anti-discrimination law. See Levy v. Commission on Human Rights and Opportunities, 236 Conn. 96, 103 (1996). Therefore, plaintiff's federal and state law discrimination claims will be reviewed together as appropriate.

conduct. Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003). The substance of the charge rather than its label controls the analysis. Id.

Plaintiff's administrative filing describes acts of escalating hostility and adverse employment action based solely upon her disability. Plaintiff's complaint describes the same conduct by the same individuals as the administrative charge, but claims that such conduct constituted gender discrimination, sexual harassment and retaliation.

A check mark does appear next to the Title VII box on the affidavit filed with the administrative agency. However, no allegations in the administrative complaint could have alerted the agency that plaintiff brought gender-based disparate treatment and sexually hostile environment claims. See Jenkins v. Education Credit Management Corp., 2007 WL 18919 *3 (10th Cir. 2007) (Title VII claim unexhausted despite checked box on charge). Investigation into plaintiff's disability discrimination claim would have focused on plaintiff's alleged disability, the burden imposed upon defendant in making a reasonable accommodation, and the employer response to the request for accommodation.[5] By contrast, discrimination based on disparate treatment or sexual harassment represent two wholly distinct theories of discrimination, requiring an investigation into defendant's intentional conduct and the work place environment

---

[5] On a claim of disability discrimination, a plaintiff must establish: 1) that she is an individual who has a disability within the meaning of the relevant statute; 2) that an employer covered by the statute had notice of her disability; 3) that with reasonable accommodation, she could perform the essential functions of the position sought; and 4) that the employer refused to make such accommodations. Stone v. City of Mount Vernon, 118 F.3d 92, 96-97 (2d Cir. 1997), cert. denied, 522 U.S. 1112 (1998). The employer then has the burden to show: 1) that making reasonable accommodation would cause it hardship, and 2) that the hardship would be undue.

relative to plaintiff's gender or sex. A disparate treatment claim requires an investigation into plaintiff's treatment and that of similarly situated comparators;[6] and an investigation into a sexually hostile environment claim would consider whether plaintiff was subject to a sexually intimidating work environment.[7] Plaintiff's discrimination claims involve the same actors and facts. However, the underlying proofs required for each claim are so distinct that the investigation into plaintiff's alleged disability would not fairly engender a query into whether plaintiff was also treated differently due to her gender or whether the workplace was permeated with sexual hostility. See Hawkins v. Wegmans Food Market, Inc., 2007 WL 1475626 *1 (2d Cir. 2007) (allegations of learning disability and gender discrimination did not alert EEOC to investigate charges of race and age discrimination); Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996) (investigation of disability charge does not fairly encompass a claim for gender

---

[6] A prima facie disparate treatment case requires plaintiff to show that: 1) she is a member of a protected class; 2) she applied for a position for which she was qualified; 3) she was rejected for the position; and 4) the circumstances give rise to an inference that there was a discriminatory motive. Howley v. Town of Stratford, 217 F.3d 141, 150 (2d Cir. 2000).

[7] To prevail on a sexually hostile work environment claim, the plaintiff must show both 1) that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the condition of her employment, and 2) that a specific basis exists for imputing to the employer the conduct that created the hostile environment. Briones v. Runyon, 101 F. 3d 287, 291 (2d Cir. 1996). Relevant factors include 1) the frequency of the discriminatory conduct; 2) the severity of the conduct; 3) whether it is physically threatening or merely an offensive utterance; and 4) whether it unreasonably interferes with an employee's work performance. Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993). "The sufficiency of a hostile work environment claim is subject to both subjective and objective measurement: the plaintiff must demonstrate that she personally considered the environment hostile, and that the environment rose to some objective level of hostility." Leibovitz v. New York City Transit Auth., 252 F.3d 179, 188 (2d Cir. 2001).

discrimination). Accordingly, the unexhausted claims of counts one and two alleging disparate treatment based on gender and sexually hostile environment will be dismissed.

However, the exhaustion requirement does not bar plaintiff's retaliation claims, which the Court construes as asserting retaliation in response to her request for a reasonable accommodation. The Second Circuit has clarified that the "reasonably related" test is not limited to post-charge conduct. Francis v. City of New York, 235 F.3d 763, 766 (2d Cir. 2000). The administrative investigation into plaintiff's request for disability accommodation, the employer response to that request and the subsequent adverse employment action could have reasonably grown into consideration of whether the request for accommodation formed a basis for retaliatory treatment. Ridgway v. The Metropolitan Museum of Art, 2007 WL 1098737 *5 (S.D.N.Y.). The retaliation claims of counts one and two will not be dismissed.

    Failure to State A Claim for Retaliation

Defendants argue that plaintiff's allegations fail to plead the requisite elements of a retaliation claim.

The Second Circuit, following Swirkiewicz v. Sorema, N.A., 534 U.S. 506 (2002), has confirmed that a plaintiff need not establish a prima facie case of discrimination in the complaint in order to survive a motion to dismiss. Leibowitz v. Cornell University, 445 F.3d 586 (2d Cir. 2006). Nevertheless, a plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Igbel v. Hasty, – – F.3d –-, 2007 WL 1717803 *10-11 (2d Cir. 2007) (applying flexible "plausibility standard" to Rule 8 pleading).

9

Here, plaintiff's allegations, namely that she requested an accommodation and thereafter suffered adverse employment action, apprise defendant of her claim and provide a sufficient basis to raise a plausible right to relief. The retaliation claims of counts one and two will not be dismissed.

Individual Capacity Claims

The Court will dismiss the CFEPA, Title VII, ADA claims brought against Dutta. Second Circuit case law has established that CFEPA, Title VII and ADA do not impose liability on individual employees. Perodeau v. Hartford, 259 Conn. 729, 744 (2002) (CFEPA ); Mandell v. County Suffolk, 316 F.3d 368, 377 (2d Cir. 2003) (Title VII); Ritton-Holly v. Griffin Hospital, 2006 WL 2686955 *1 (D. Conn.) (ADA). Accordingly, the claims against Dutta in counts one, two and three will be dismissed.

Wrongful Constructive Discharge

The Court construes count four as alleging a state common law claim for wrongful constructive discharge based on plaintiff's allegation that "[t]he working conditions created by the Defendants were so difficult and intolerable, the Plaintiff, a reasonable person, felt forced to resign without alternative to accepting any position including that of an "independent contractor." Defendants argue that this claim should be dismissed since plaintiff has not alleged that her discharge violated public policy.

Constructive discharge occurs when an employer intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily. Brittell v. Dept. of Correction, 247 Conn. 148, 178 (1998). However, the employee must still prove the elements of a common law wrongful discharge claim, which requires that the discharge violate public policy and that plaintiff has no other available means of

redress. Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 474-475 (1980). A state or federal statutory remedy such as CFEPA, Title VII, or the ADA precludes a common law claim for wrongful discharge in violation of public policy. Storm v. ITW Insert Molded Prods., 400 F.Supp.2d 443, 446-47 (D.Conn. 2005).

In her opposition memorandum, plaintiff asserts that her allegations point to four types of discriminatory conduct (gender, disability, retaliation and sexual harassment) that concern a violation of public policy. However, as previously explained, plaintiff cannot premise her state common law wrongful discharge claim where federal and state remedial statutes already exist to redress such violations of public policy. Accordingly, the Court will dismiss plaintiff's count four.

### Rehabilitation Act Claim

Count five asserts a claim pursuant to the Rehabilitation Act against both defendants. Defendants argue that plaintiff's Rehabilitation Act claim is improper because the statute does not apply to entities in procurement-type relationships with the federal government and because the statute does not impose individual liability.

The Rehabilitation Act prohibits disability discrimination by certain entities that receive "Federal financial assistance." 29 U.S.C. § 794 (a). Plaintiff alleges that defendant "provides the service of its business efforts to the United States government by way of business associations and regulated activities which result in the benefit to the Defendants of substantial federal funds."

Courts have held that the "Federal financial assistance" does not encompass procurement contracts or contracts in which goods or services are purchased by the government that do not directly serve the public. U.S. v. Univ. Hosp. Of the State Univ.

Of New York, 575 F.Supp. 607, 612-13 (E.D.N.Y. 1983).  In order to determine whether defendant Mailroom Technology receives "Federal financial assistance," the Court must consider facts outside of the pleadings to determine the nature of defendant Mailroom Technology's contractual relationship with the federal government.  Accordingly, the motion to dismiss will be denied as to Mailroom Technology.

However, the Court will grant the motion to dismiss the Rehabilitation Act claim as to Dutta.  Diggs v. Manchester, 303 F.Supp.2d 163, 175 (D.Conn. 2004) (no individual liability under Rehabilitation Act)    Accordingly, only count five's individual capacity claim against Dutta will be dismissed.

Negligent Infliction of Emotional Distress

In count six, plaintiff alleges negligent infliction of emotional distress. Defendants assert that plaintiff has failed to provide allegations that defendants negligently inflicted emotional distress during the termination process as required by Connecticut law.  Perodeau v. Hartford, 259 Conn. at 750.

The Court agrees that Connecticut law does not recognize negligence-based emotional distress claims occurring within the continuing employment relationship. Antonopoulos v. Zitnay, 360 F.Supp.2d 420, 431 (D.Conn. 2005).  Plaintiff's allegations of negligent infliction of emotional distress pertain largely to her continuing employment relationship with Dutta.  Accordingly, to the extent that these allegations form the basis of plaintiff's assertion of negligent infliction of emotional distress, such claim will be dismissed.

Plaintiff also alleges that "manner of her termination caused her significant feelings of anxiety and emotional instability leading to acute asthmatic distress."

Defendants maintain that plaintiff's allegations cannot sustain a finding of unreasonableness necessary to a claim of negligent infliction of emotional distress.

To prevail on a claim of negligent infliction of emotional distress, plaintiff must prove that defendants knew or should have known that its conduct involved an unreasonable risk of causing emotional distress and that the distress if it was caused might result in illness or bodily harm. Thomas v. Saint Francis Hospital and Medical Center, 990 F. Supp. 81, 91 (D. Conn. 1998). The distress experienced by plaintiff must be reasonable in light of defendants' conduct. Barrett v. Danbury Hosp., 232 Conn. 242, 261 (1995).

In this instance, plaintiff alleges that she was informed that she was to be terminated during a phone conversation with DeFrank on the same day that she had been hospitalized for an acute asthma attack and respiratory distress. Plaintiff alleges further that she had left a voice mail message for Dutta regarding that attack. Construing the facts most favorably to plaintiff, the Court finds that plaintiff has stated a claim for negligent infliction of emotional distress based on her termination on the same day that defendant Mailroom Technology knew she had been hospitalized for a condition alleged to be caused by the work place stress. However, this claim is limited to Mailroom Technology since plaintiff does not allege that Dutta was involved in the termination process. Count six will not be dismissed.

<u>Intentional Infliction of Emotional Distress</u>

Defendants assert that count seven should be dismissed because plaintiff has failed to allege conduct sufficiently extreme and outrageous to support her claim of intentional infliction of emotional distress.

Liability for intentional infliction of emotional distress requires conduct exceeding all bounds of decent society and which is calculated to cause, and does cause, mental distress of a very serious kind. DeLaurentis v. New Haven, 220 Conn. 225, 266-67 (1991).

In the instant case, plaintiff has alleged conduct of escalating hostility that caused plaintiff to feel threatened and unsafe and to suffer asthmatic attacks and respiratory distress. Depending upon plaintiff's medical and emotional condition and the level of hostility exhibited by Dutta, these allegations could plausibly be deemed to be extreme and outrageous. The Court will leave plaintiff to her proof and will not dismiss count seven.

Negligent Supervision

In count eight, plaintiff alleges negligent supervision by Mailroom Technology based on failure by Dutta and DeFrank to respond properly to her complaints of a hostile work environment and her request for reasonable accommodation.

Any claim for physical injury damages suffered on the job due to an employer's negligence are barred by the state workers' compensation laws. Sullivan v. Lake Compounce Theme Park, Inc., 277 Conn. 113, 118 (2006). Accordingly, plaintiff's claim is limited to her emotional injuries.

However, as previously discussed, Connecticut law does not recognize negligence-based emotional distress claims occurring within the continuing employment relationship. Antonopoulos, 360 F.Supp.2d at 431. Since plaintiff's negligent supervision claim is animated by allegations relative to her continuing work relationships, the Court will dismiss count eight.

## CONCLUSION

Based on the foregoing, defendants' motion to dismiss [#19] is GRANTED in part and DENIED in part. The Court dismisses plaintiff's gender-based Title VII and CFEPA claims, all individual capacity claims pursuant to Title VII, ADA, CFEPA and the Rehabilitation Act, the claim of constructive wrongful discharge, claims of negligent infliction of emotional distress against Dutta and based on the continuing employment relationship, and the claim of negligent supervision.

The motion for hearing [#25] is DENIED.

Plaintiff is instructed to file an amended complaint consistent with this Ruling within ten days of this Ruling's filing date.

_____/s/_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE

Dated this __9th___ day of August, 2007 at Bridgeport, Connecticut.